UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BRANDON L. FRADY, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No.: 3:15-CV-399-TAV-CCS ) |
| CPL. COLLINS, C/O HENSLEY, C/O LANE, C/O JACKSON, JOHN DOE, CAPTAIN GIBSON, BRANDON FOSTER, TOSHIA RIDENOUR, SGT. PEDDICORD, DODD DONIVAN, RACHEL RUBY, MARGIE NURSE, QWEN NURSE, SHAWN PHILLIPS, LYNNDY HOUSTON, and DERRICK SCHOFIELD, | ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

The Court is in receipt of a pro se complaint for violation of civil rights pursuant to 42 U.S.C. § 1983 [Doc. 3] and two motions for leave to proceed *in forma pauperis* [Docs. 1 and 5]. It appears from the application that Plaintiff lacks sufficient financial resources to pay the $350.00 filing fee. Plaintiff's second motion for leave to proceed *in forma pauperis* [Doc. 5], which contains the documents required by 28 U.S.C. § 1915(a)(2), is therefore **GRANTED**, and Plaintiff's first application for leave to proceed *in forma pauperis* [Doc. 1], which is not supported by the required documents, is **DENIED**.

For the reasons set forth below, however, Plaintiff's claims for deliberate indifference arising out of a denial of medical care as to Defendants Ridenour, Peddicord, Ruby, Margie, and Qwen are **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983, any claims set forth in the job descriptions in the complaint are **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983, Plaintiff's requests for attorney

fees and an investigation are **DISMISSED**, and any claims arising out of the alleged investigation of Plaintiff's Prison Rape Elimination Act ("PREA") are **DISMISSED**.

Accordingly, this action will proceed as to two claims:

(1) the claim that Defendants Collins, Lane, Doe, Hensley, and Jackson were present when one of these officers punched Plaintiff in the back of the head and one of these officers stuck his finger in Plaintiff's rectum and pushed it hard; and

(2) the claim that Defendant Donivan retaliated against Plaintiff for Plaintiff filing a complaint under PREA.

## I. SCREENING STANDARD

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d

990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint states that on May 29, 2015, while he was incarcerated at Morgan County Correctional Complex ("MCCX"), he was involved in a verbal altercation with another inmate during a mental health group therapy session, and that Defendants Collins, Hensley, Jackson, Doe, and Lane came to resolve the altercation [Doc. 3 p. 6]. Plaintiff alleges that Defendant Hensley then called him a "b****," that Plaintiff told Defendant Hensley not to talk to him that way, and that Defendant Hensley told Plaintiff to "wait [un]til [Hensley] [got Plaintiff] back to the cell," as Defendant Hensley would then show Plaintiff "a b****" [*Id.* at 7]. Plaintiff states that Defendants Collins, Hensley, Jackson, Doe, and Lane then escorted the other inmate to his cell, and that the therapist wanted to keep Plaintiff in the therapy room, but Defendant Hensley said "no the b*** is going back to his cell[,] I got something for him" [*Id.*].

Plaintiff alleges that Defendant Hensley and the other officers took him to his cell, where one unspecified officer punched him in the back of the head, that Defendant Hensley stated "now you are going to be a good b****," and that an unspecified officer then put his finger in Plaintiff's rectum and pushed it hard [*Id.*]. Plaintiff states that an officer told him that they were going to remove the restraints, but that if he moved he would be shot with the taser [*Id.*].

Plaintiff states that he then called Therapist Theresa and told her what happened and that he wanted to "file a PREA," which appears to refer to an official report of a violation of the Prison Rape Elimination Act ("PREA") [*Id.* at 8]. Plaintiff asserts that Therapist Theresa

3

notified everyone and that, a couple of hours later, he told Defendants Ridenour and Peddicord about the incident and requested medical attention, but that Defendant Ridenour told Plaintiff that he would not get any medical treatment [*Id.*].

Plaintiff next states that, one or two hours later, Defendants Ridenour and Ruby and Therapist Christine visited his cell, that Plaintiff told them the same story again, that he told them that he wanted mental and medical treatment, and that Defendant Ridenour again said that Plaintiff would not get medical treatment until Defendant Ridenour said so [*Id.*]. Plaintiff asserts that he went on suicide watch that night and told Nurse Margie that he wanted medical attention, but that she could not provide it because she had been told not to provide him with medical treatment for the assault [*Id.*].

Plaintiff further states that, even though he told Defendant Donivan that he was still suicidal, Defendant Donivan took Plaintiff off suicide watch the next day and told Plaintiff that he was doing so because Plaintiff had filed a PREA against Defendant Donivan's friend, Defendant Collins [*Id.* at 8–9]. Plaintiff also alleges that Defendant Donivan told him that he did not care if Plaintiff killed himself and that Defendant Donivan was not going to be sent out for a rape kit [*Id.* at 9]. Plaintiff characterizes all of this as retaliation for him filing a PREA [*Id.*].

Plaintiff states that he was then taken back to his cell, that he was still denied medical attention, that he called the rape hotline, and that the person he spoke to told him that an investigation of the denial of medical attention would begin [*Id.*]. Plaintiff further asserts that he went back on suicide watch in late May 2015 and that, during this time, Defendant Ridenour told the PREA hotline that Plaintiff had told Defendant Donivan that the assault never happened, resulting in the investigation ending [*Id.*]. Plaintiff states that the investigation was reopened after Plaintiff told the hotline that he had never said that the attack did not happen, however [*Id.*].

4

As relief, Plaintiff seeks attorney fees and court costs, an investigation by the Attorney General, and compensatory and punitive damages [*Id.* at 10]. Plaintiff also requests that the Court make TDOC follow the PREA laws [*Id.*].

## III. ANALYSIS

### A. Deliberate Indifference

Plaintiff alleges that Defendants Ridenour, Peddicord, Ruby, Margie, and Qwen were deliberately indifferent to his need for medical care after the alleged sexual assault. Deliberate indifference to a prisoner's serious medical need is "an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). To establish such a claim, a plaintiff must demonstrate both (1) that he objectively had a "sufficiently serious medical need" and (2) that the defendant denied him medical care with a "'sufficiently culpable state of mind.'" *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Id.*

Even accepting the allegations of Plaintiff's complaint as true and liberally construing them in Plaintiff's favor, Plaintiff has not set forth any allegation that he suffered a serious medical need that required a doctor's attention as a result of the physical assaults alleged in the complaint. As such, the complaint does not raise Plaintiff's right to relief for a claim of deliberate indifference based upon a denial of medical care "above a speculative level" and therefore fails to state such a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

Liberally construing the complaint in favor of Plaintiff, the allegations therein that could relate to a serious medical need are: (1) an unspecified officer punched him in the back of the

5

head; and (2) an unspecified officer (it is unclear whether it is the same one) put his finger in Plaintiff's rectum and pushed it hard. While Plaintiff states that he requested medical care several times after these incidents and that those requests were denied, Plaintiff does not set forth what, if any, pain or injury resulted from either of the alleged acts.

First, Plaintiff does not allege that he had any injury that had been diagnosed by a physician at the time of the alleged denials of medical care, and the allegations in the complaint do not support such a finding.

Further, Plaintiff's assertions that he was punched in the back of the head and that an officer put his finger in Plaintiff's rectum and pushed it hard, standing alone, do not allege an objectively serious medical need. Plaintiff's complaint does not set forth any facts tending to show that these acts resulted in any pain or any physical condition that would have been treatable or remedied by a doctor's care.[1] As the complaint lacks any facts suggesting that these acts resulted in any medical condition, no reasonable lay person would easily recognize that Plaintiff had an objectively serious medical need as a result of these acts. *Williams v. McCain*, No. 2008 WL 2795952, at *5–6 (E.D. Mich. July 8, 2008) (holding that a plaintiff's allegation that he was punched in the mouth only suggested the conclusion that the plaintiff had been subjected to a minor attack and that a reasonable fact finder therefore could not conclude that the plaintiff suffered from an objectively serious medical need based on this allegation).

Plaintiff likewise has not alleged in his complaint that he identified any serious medical need to any Defendant. As such, Plaintiff has set forth no facts to establish the subjective

---

[1] As set forth above, Plaintiff does not allege that he was denied mental health treatment after the assault, but rather repeatedly states that he requested medical care and sets forth various assertions relating to the mental health treatment he was provided after the assault. Thus, it is apparent that Plaintiff's deliberate indifference claim relates only to medical care.

requirement of a culpable state of mind as required to support a claim for denial of medical care as to any Defendant. *Id.*

Accordingly, all claims arising out of the alleged denial of medical care after these incidents fail to state a claim upon which relief may be granted under § 1983 and they are **DISMISSED**.

### B. Job Descriptions

Plaintiff's complaint also sets forth job descriptions for each Defendant. The job descriptions Plaintiff sets forth include each Defendant's job title and statements that these Defendants are "responsible for" various components of prison life, including but not limited to grievances, operation of unit, welfare of inmates, investigations, operation of MCCX, medical care, reports of sexual abuse, and PREA allegations. While it is unclear whether Plaintiff seeks to state a claim based on these job descriptions, it is the only information Plaintiff provides as to some Defendants. Accordingly, the Court will address them as such.

To the extent Plaintiff intended for these job descriptions to assert claims against Defendants under § 1983, however, they are insufficient. First, a failure to follow prison policy, such as a job description, does not rise to the level of a due process violation protected by the Constitution. *Sweeton v. Brown*, 27 F.3d 1162, 1165 (6th Cir. 1994) (holding that there is no viable legal theory under which federal due process requires a defendant to follow procedural rules created by state entities). Further, to the extent Plaintiff seeks to hold any of these Defendants liable for the acts alleged in the complaint under a theory of *respondeat superior*, such claims are not cognizable under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Accordingly, to the extent Plaintiff intended to assert claims arising out of these job descriptions,

7

they fail to state a claim upon which relief may be granted under § 1983 and they are **DISMISSED**.[2]

### C. Requests for Relief

In his request for relief, Plaintiff seeks various forms of relief, including attorney fees. As Plaintiff is not represented by an attorney, however, he is not entitled to attorney fees and this request for relief is therefore **DISMISSED**. *Kay v. Ehrler*, 900 F.2d 967, 969–70 (6th Cir. 1990) (holding that it is well-settled that pro se plaintiffs cannot recover attorney fees under 42 U.S.C. § 1988 for litigation of civil rights actions and that an attorney who litigated a civil rights action pro se was not entitled to attorney fees).

Likewise, Plaintiff's request for an investigation by the Attorney General's office is not cognizable under § 1983, as Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Accordingly, this request is **DISMISSED**.

### D. Remaining Defendants and Claims

The Court has reviewed all of Plaintiff's claims and, although this Court is mindful that a pro se complaint is to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), it concludes for the reasons set forth above that the complaint fails to state a claim upon which relief may be granted as to the claims addressed above.

---

[2] Plaintiff also generally asserts that all Defendants had actual knowledge of serious harm and risk and failed to act [Doc. 3 p. 6]. As Plaintiff presents no facts to support this assertion, however, it is conclusory and fails to state a claim upon which relief may be granted under § 1983. *See Bell Atl. Corp. v. Twombly*, 555 U.S. 544, 561–63 (2007) (explaining that wholly conclusory allegation giving rise to mere possibility plaintiff might later establish undisclosed facts supporting recovery is not well-pled and does not state a plausible claim).

Accordingly, Defendants Gibson, Foster, Ridenour, Peddicord, Ruby, Margie, Qwen, Phillips, Houston, and Schofield are **DISMISSED** from this action. The only remaining Defendants are Collins, Lane, Doe, Hensley, Jackson, and Donivan. Further, the only claims which remain against them are for compensatory and punitive damages arising out of the following allegations:

1. **Defendants Collins, Lane, Doe, Hensley, and Jackson**

Plaintiff's assertion that, while all of these Defendants were in his cell, one of these officers punched him in the back of the head and one of these officers stuck his finger in Plaintiff's rectum and pushed it hard; and

2. **Defendant Donivan**

Plaintiff's assertion that Defendant Donivan retaliated against him for filing a PREA against Defendant Collins by taking Plaintiff off suicide watch and not providing Plaintiff with a rape kit.[3]

The Clerk is hereby **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Collins, Lane, Doe, Hensley, Jackson, and Donivan. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty

---

[3] Plaintiff's complaint also asserts that Defendant Ridenour told the PREA hotline that Plaintiff had told Defendant Donivan that the sexual assault had not occurred, and that this was not true. Plaintiff also states that this statement caused the investigation to be temporarily closed, but that the investigation was later reopened on Plaintiff's request. While it is unclear whether Plaintiff alleges that Defendant Donivan or Defendant Ridenour was responsible for the alleged untruth, these allegations fail to state a claim against either of these Defendants, as Plaintiff has no constitutional right to a PREA investigation. *See Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278, at * 5 (W.D. Ky. Sept. 16, 2014) (stating that "[a]lthough not addressed by the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff" and collecting cases to support that assertion). Accordingly, Plaintiff's assertions arising out of the irregularities in his PREA investigation fail to state a claim upon which relief may be granted under § 1983 and are therefore **DISMISSED**.

(20) days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to timely return the completed service packets could jeopardize his prosecution of this action.

Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, judgment by default may be entered against him.

Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Failure to provide a correct address to this Court within ten (10) days following any change of address may result in the dismissal of this action.

Because Plaintiff is an inmate in the Morgan County Correctional Complex, he is herewith **ASSESSED** the civil filing fee of $350.00. Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at MCCX is directed to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902, as an initial partial payment, whichever is greater of:

(a)     twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

(b)     twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three

10

hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk.  28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this Memorandum and Order to the Warden of the MCCX, the Commissioner of the Tennessee Department of Correction, and the Attorney General for the State of Tennessee to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of the Prison Litigation Reform Act relating to payment of the filing fee.  The Clerk is further **DIRECTED** to forward a copy of this Memorandum and Order to the Court's financial deputy.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE